# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 395 | **DATE** | 6/13/2000 |
| **CASE TITLE** | Singleton vs. Chicago School Reform Board et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss (doc. #14)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' Motion to Dismiss (doc. # 14) is granted in part and denied in part in so far as this Court: (1) **dismisses with prejudice** Count IV against the Board as it relates to all alleged Title IX claims occurring prior to 1/20/98; all other claims under this Count remain in tact; (2) **dismisses with prejudice** Counts VI & VIII against Defendant Jordan; (3) **dismisses with prejudice** Counts VI & VIII as against the Board, Vallas, Chico, Bobbins, Butt, Lavelle and Saffold as they relate to all alleged § 1983 violations occurring prior to 1/20/98; (4) **dismisses without prejudice** Counts VI & VIII as against the Board and all individual Defendants as they relate to all § 1983 violations occurring on or after 1/20/98; (5) **dismisses** Count IX on Plaintiff's consent.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | Document Number |
| | No notices required. | | number of notices | | |
| ✓ | Notices ~~mailed~~ distributed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | JUN 14 2000 | docketing deputy initials | | |
| | Mail AO 450 form. | | date mailed notice | | |
| | Copy to judge/magistrate judge. | | | | |
| | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KAARON SINGLETON,         )
      Plaintiff,           )
                     )      **CAUSE NO. 00C395**
      **v.**              )
                     )      **JUDGE WILLIAM J. HIBBLER**
**CHICAGO SCHOOL REFORM BOARD OF**   )
**TRUSTEES OF THE BOARD OF**        )
**EDUCATION OF THE CITY OF CHICAGO,**  )
**GERY J. CHICO, NORMAN BOBINS,**    )
**TARIQ BUTT, AVIS LAVELLE, GENE**     )
**SAFFOLD, PAUL G. VALLAS, and PAUL**   )
**JORDAN,**                        )
      **Defendants.**         )

DOCKETED

JUN 14 2000

## MEMORANDUM AND ORDER

This matter comes before this Court on Defendants' Motion to Dismiss (doc. #14). For the reasons set forth below, this Court denies in part and grants in part Defendants' motion.

### BACKGROUND

Plaintiff, Kaaron Singleton ( the "Plaintiff") has filed an eight-count complaint against Defendant Chicago Reform Board of Trustees of the Board of Education of the City of Chicago (the "Board"), as well as the following individual Defendants, in both their individual and official capacities: Gery J. Chico ("Chico"), Norman Bobbins ("Bobbins"), Tariq Butt ("Butt"), Avis Lavelle ("Lavelle"), Gene Saffold ("Saffold"), (collectively, the "Board Members"), Paul Vallas ("Vallas"), and Paul Jordan ("Jordan"). Chico, Bobbins, Butt, Lavelle and Saffold are members of the Board. Vallas is the Chief Executive Officer ("CEO") of the Chicago Public Schools. Paul Jordan is the former Principal of Mount Vernon Elementary School.

Plaintiff filed her complaint on January 20, 2000, bringing four of the eight counts

pursuant to: Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (Count IV); 42

U.S.C. § 1983 and the United States Constitution (Counts VI and VIII), and Illinois state tort law

(Count IX). In Count IV, plaintiff asserts a claim of unlawful employment practices against

the Board, in violation of Title IX. In Count VI, plaintiff alleges a § 1983 Substantive Due

Process violation, in violation of the First and Fourteenth Amendments of the Constitution,

against all Defendants. In Count VIII, Plaintiff asserts a § 1983 Equal Protection violation, in

violation of the Fourteenth Amendment to the Constitution, against all Defendants. Finally, in

Count IX, plaintiff alleges tortious interference with employment expectancy, in violation of

Illinois state law, against all Defendants.

Presently, Defendants move to dismiss Counts IV, VI, VIII and IX of the complaint. In

response to this motion, Plaintiff has voluntarily dismissed Count IX, but maintains all other

Counts. For purposes of the Defendants' motion to dismiss, this Court is obligated to take as

true the following alleged facts which come from Plaintiff's complaint.

## FACTS

Plaintiff, a female, was hired as a tenure-track teacher in the Chicago Public School

System. On September 1, 1995, she was appointed to Mount Vernon Elementary School ("Mt.

Vernon"). During the course of her appointment, Plaintiff was supervised by Defendant Paul

Jordan ("Jordan"), a male, former Principal of Mount Vernon.

During the 1996-1997 school year, Plaintiff alleges that Jordan subjected her to repeated

and unwelcome sexual advances, offensive language and unlawful retaliation. On one occasion,

Plaintiff alleges that during a school open house, in the presence of several teachers, Jordan

stated that if Plaintiff were tired, all she needed was for "someone to hook that ring in [her] belly and lead [her] around for awhile." On another occasion during the same school year, Plaintiff alleges that Jordan approached her in the school parking lot and invited her for "dinner and drinks," but she declined. In response, Jordan allegedly remarked that Plaintiff was "probably tired of teaching, and would much rather be laid out in playboy magazine as a centerfold." Plaintiff claims that such incidents prompted her to obtain medical treatment for stress.

Plaintiff also alleges that Jordan treated her differently than other employees. For example, upon returning from work after an absence taken due to stress from Jordan's harassment, Plaintiff was asked by Jordan to produce a doctor's note. Plaintiff contends that Jordan did not ask other employees to produce such notes. Plaintiff further claims that Jordan told her and other teachers that if any of them were planning to file grievances against him, "you will all go down with me."

Plaintiff also alleges that during the 1996-1997 school year, Jordan intentionally took actions to make her job responsibilities more difficult, including scheduling a program to interfere with one sponsored by Plaintiff. Additionally, Jordan denied Plaintiff the use of a teaching assistant and restricted her job responsibilities, including terminating her participation with the SIP team, after school program, and spelling bee.

Furthermore, Plaintiff alleges that Jordan harassed her on a "near-daily" basis during the 1996-1997 school year by either stalking her in school hallways or making unwarranted appearances in her classroom. Plaintiff claims that when she wore new clothes or changed her hairstyle, Jordan would frequently visit her classroom and stare at her while she was teaching.

On March 14, 1997, Plaintiff alleges that Jordan called her into the school office for the

3

purpose of discussing a student's problem. Following the discussion, Jordan allegedly informed Plaintiff that he had been "watching her" and that he often "goes through her things" after she leaves for the day. When Plaintiff asked Jordan if he had been watching her as part of the teacher evaluation process, Jordan remarked sarcastically, "Why should I? So you can improve your performance." Following this comment, Plaintiff claims that she departed the school to distance herself from Jordan. Plaintiff did not return to her teaching duties again. She claims that she was constructively discharged from her position by the Board, effective March 14, 1997.

Several weeks later, on April 1, 1997, Plaintiff filed a complaint against Jordan with the Board's Region VI Education Officer. Plaintiff claims that in addition to this complaint, she also requested that the Education Officer transfer her to another school so that she may get away from Jordan. Plaintiff states that the Education Officer spoke with Jordan, but conducted no other investigation. According to Plaintiff, the Education Officer subsequently informed her that her complaints were unwarranted and that she should return to school.

On the same day, Plaintiff sent Jordan an application for a leave of absence, citing job-related stress. According to Plaintiff, neither Jordan, nor the Board, informed her as to the status of her application. Moreover, Plaintiff claims that she contacted the Board's central offices and was told that they could not determine anything regarding the status of her application.

After several weeks passed, on April 25, 1997, Plaintiff reported her complaints about Jordan to the Board's Title IX Officer who specializes in teacher discipline cases. After meeting with the Officer, Plaintiff was left with the impression that the Board's investigation would take a substantial amount of time to complete. Therefore, on May 2, 1997, Plaintiff filed a grievance with the Board's labor relations office. The Board, however, declared the grievance "resolved"

4

because the Board's Title IX Officer was in the process of investigating Plaintiff's complaints.

On August 20, 1997, the Board's Title IX Officer released a final report finding that Plaintiff's complaints were "unsubstantiated." According to Plaintiff, no corrective action was consequently taken against Jordan. As such, Plaintiff claims that the investigation lacked neutrality and was conducted to benefit the Board "at every turn."

In the interim period between the beginning of the investigation on April 25, 1997, and the Title IX Officer's final report on August 20, 1997, Plaintiff began working part-time outside of the Chicago Public School system. Plaintiff claims that such employment was necessary because she had depleted her allotment of sick days and her personal savings. Plaintiff also claims that such employment was necessary to fulfil her obligations under the law to mitigate her damages. It should also be noted that Plaintiff never returned to her position. She departed her position at the point in which the Title IX Officer's investigation had begun and she remained separated from her work assignment until her employment was terminated by the Board on August 27, 1998.

In March, 1988, prior to termination, Plaintiff states that she participated in a multi-day arbitration hearing related to her employment grievance. Plaintiff claims that the Jordan, the Region VI Officer and Title IX Officer were called as witnesses in the Board's defense. Plaintiff alleges that the witnesses each gave biased testimony in favor of the Board and in further retaliation against her. Plaintiff also claims that during the first day of this hearing, she learned that Jordan had resigned his position as principal of Mount Vernon during the Fall of 1997. At this point, and several times thereafter, Plaintiff claims she attempted to return to her position at Mount Vernon, but to no avail. She also claims that the Board informed her that although she

5

never officially "lost" her position, she was not allowed to return to her teaching position. The Board also informed Plaintiff that they had originally granted her application for an illness leave, but that the leave had expired. Plaintiff, however, claims that she was never informed by the Board that the leave was originally granted.

During the multi-day arbitration hearing in March, 1998, the Board had unsuccessfully attempted to serve plaintiff at home with dismissal papers. In a document dated August 27, 1998, the Board terminated Plaintiff's employment. The Board claims that Plaintiff was terminated because she engaged in secondary employment while on a Board-approved leave of absence. Plaintiff alleges that her termination was "a mere pre-text to hide unlawful retaliation." She further alleges that the Board does not terminate other employees who work other jobs to mitigate damages while their claims are pending.

## LEGAL STANDARDS

### Motion to Dismiss Standard

Motions to dismiss under Rule 12(b)(6) should test the sufficiency of a Plaintiff's complaint rather than address the merits of the case. This Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Because a Plaintiff's allegations are taken as true, a Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957);

6

*Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7ᵗʰ Cir. 1994). In other words, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166 (7ᵗʰ Cir. 1992). In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court's review is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes. Fed. R. Civ. P 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7ᵗʰ Cir. 1993).

<u>Statute of Limitations</u>

Since the statute of limitations is an affirmative defense, the plaintiff need not negate it in her complaint. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). However, should a plaintiff plead facts which shows that the suit is time barred, or otherwise without merit, he or she will effectively plead themselves out of court. *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 79 (7ᵗʰ Cir. 1992); *See also DiBenedetto v. City of Chicago*, 873 F. Supp. 106, 108 (N.D. Ill. 1994). "A complaint that on its face reveals that the plaintiff's claim is barred by a statute of limitations or repose can be dismissed on a motion to dismiss, ...and if the suit is not vulnerable to such disposition only because the complaint omits the date at which the statutory period began to run, the defendant can supply that fact by an affidavit attached to his motion to dismiss." *Tregenza v. Great American Communications Co.*, 12 F.3d 717 (7ᵗʰ Cir. 1993).

ANALYSIS

7

<u>I. § 1983 Claims (Counts VI & VIII) Against Defendants Board,</u>
<u>Jordan, Vallas, Chico, Bobbins, Butt, Lavelle & Saffold</u>

Plaintiff brings Counts VI and VIII of her complaint under 42 U.S.C. § 1983 which

provides that:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or
> use of any state or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the injured in an action at law, suit in
> equity, or other proper proceedings for redress. . ."

42 U.S.C. § 1983.

<u>A.  Defendants' Motion to Dismiss Counts VI & VIII</u>
<u>for Failure to State a Cause of Action</u>

In their motion to dismiss, Defendants argue that Plaintiff fails to state a claim that is

actionable under § 1983.  In order to sufficiently state a § 1983 cause of action, Plaintiff must

establish that: (1) she had a constitutionally protected right; (2) she was deprived of this right in

violation of the Constitution; (3) the Defendants intentionally caused such deprivation; and (4)

the Defendants acted under color of state law. *McNabola v. Chicago Transit Authority*, 10 F.3d

501, 513 (7th Cir. 1993).  In other words, in order  to properly state a § 1983 claim, the Plaintiff

must show that there was a constitutional violation which was committed by an individual acting

under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

<u>1.  Constitutional Injury Requirement</u>

In assessing the validity of Plaintiff's § 1983 claim, the Court must first determine

whether or not the defendant deprived the plaintiff of a constitutionally protected right. *Graham*

*v. Connor*, 490 U.S. 386, 393 (1989); *Munoz v. Chicago School Reform Board of Board of*

*Trustees*, No. 99 C 4723, 2000 WL 152138, at *1 (N.D. Ill.Feb. 4, 2000).

### a. Plaintiff's Constitutional Injury Allegations under Count # VI

#### i. Alleged Substantive Due Process Violation

Plaintiff puts forth her Count VI claim under the rubric of "substantive due process," yet fails to indicate what specific substantive due process rights were violated. Again, Plaintiff merely states that she was terminated for "arbitrary and capricious" reasons and that she was subjected to "retaliatory conduct" in violation of her First Amendment rights.

In order to properly challenge the substance of a government decision on substantive due process grounds, the plaintiff must show: "(1) that the decision was arbitrary and irrational, and (2) that the decision-makers either committed another substantive constitutional violation or that state remedies are inadequate." *Strasburger v. Board of Education*, 143 F.3d 351, 357 (7th Cir. 1997); *see also Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 958 (7th Cir. 1988); *Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996); *Polenz v. Parrott*, 883 F.2d 551, 558-59 (7th Cir. 1989).

According to the Seventh Circuit, "a claim based on substantive due process must be based on the deprivation of an underlying protected life, liberty or property interest." *Zorzi v. County of Putnam*, 30 F.3d 885 (7th Cir. 1994). As such, " the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument." *Id.* at 894 (*citing Jeffries v. Turkey Run Consol. School Dist.*, 492 F.2d 1, 3-4 (7th Cir. 1974)). Once plaintiff can show a protected life, liberty, or property interest, plaintiff may then maintain a substantive due process cause of action for "arbitrary" actions. *See DeTomaso V. McGinnis*, 970 F.2d 211, 214 (7th Cir. 1992). Thus, in the absence of a

9

life, liberty or property interest, a public employee may be terminated for arbitrary and capricious reasons. *Chicago Reform Board of Trustees v. Substance, Inc.*, 79 F. Supp.2d 919, 939 (N.D.Ill. 2000) *(citing Zori,* 30 F.3d at 895) *(citing DeTomaso,* 970 F.2d at 214 (7th Cir. 1992)).

In the case at bar, plaintiff does not specifically label the type of interest upon which her substantive due process claim is based. This Court can be certain, however, that Plaintiff's claim is not based on a deprivation of life. Hence, Plaintiff's claim must be based on either a deprivation of "liberty" or "property."

In regard to liberty, the Seventh Circuit has previously determined that one viable liberty interest is "occupational liberty." *Illinois Psychological Association v. Falk,* 818 F.2d 1337, 1343-44 (7th Cir. 1987). Although occupational liberty is a legitimate liberty interest, it is not protected under the substantive due process clause. *Id.* at 1337. Instead, "any cause of action for deprivation of occupational liberty would be confined to a claim under procedural due process; there is no such cause of action under substantive due process." *Zori,* 30 F.3d at 895 *(citing Falk,* 818 F.2d at 1337, 1343-44). Given that occupational liberty falls exclusively under the framework of procedural due process, Plaintiff may not claim that her substantive due process rights were violated based on a deprivation of occupational liberty. Since the Plaintiff does not sufficiently state a deprivation of life or liberty, her last resort is to claim a deprivation of "property."

According to the Supreme Court, the Constitution does not create property interests, but instead, such interests are created under state law: "[property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of

10

entitlement to those benefits." *Board of Regents* v. *Roth*, 408 U.S. 564, 577 (1972). A property

interest in continued employment may also be created by express contract, or by implied

contract. The Seventh Circuit summarizes succinctly the manner in which a property right may

be created under express or implied contract:

> [a] written contract with an explicit tenure provision clearly is evidence of a
> formal understanding that supports a teacher's claim of entitlement to continued
> employment unless sufficient "cause" is shown. Yet absence of such explicit
> contractual provision may not always foreclose the possibility that a teacher has a
> property interest in re-employment. For example, the law of contracts in most, if
> not all, jurisdictions long has employed a process by which agreements, though
> not formalized in writing, may be "implied." 3 A. *Corbin on Contracts* §§ 561-
> 572A (1960). Explicit contractual provisions may be supplemented by other
> agreements implied from the promissor's words and conduct in the light of the
> surrounding circumstances. *Id.* at § 562. And, "[t]he meaning of (the promissor's)
> words and acts is found by relating them to the usage of the past.

*Carr v. Board of Trustees of the University of Akron*, 465 F.Supp. 886, 901 (N.D. Ohio. 1979)

(citing *Bishop v. Wood*, 426 U.S. 341 (1976).

Thus, it is apparent that for a plaintiff to properly state a deprivation of a property interest, this

interest must have first been created by statute, express contract or implied contract. In other

words, the property interest must have been created by statute, or by the express or implied terms

of a plaintiff's employment situation. See *Cleveland Bd. of Education v. Loudermill*, 470 U.S.

532, 538-40 (1985).

In the present case, Plaintiff fails to plead facts showing that she possessed a viable

property interest in her teaching position. She indicates that she was a non-tenured teacher, but

she fails to reveal the precise terms of her employment contract or the nature of her teaching

position. Hence, without alleging the deprivation of a recognized life, liberty or property

interest, Plaintiff fails to properly state a § 1983 substantive due process violation.

11

Therefore, this Court **GRANTS** defendants' motion to dismiss Count VI as it relates to plaintiff's Substantive Due Process claim against all Defendants.

### ii.  Alleged First Amendment Violation

In her complaint, Plaintiff alleges that defendants' retaliatory conduct was done in violation of her First Amendment rights.  Plaintiff, however, fails to indicate in her complaint precisely what it is that she terms "retaliatory conduct."  She could be referring to Jordan's actions, the actions of the Board's Region VI Education Officer,  the Title IX Officer's investigation, the actions of the Board, Board Members and Vallas,  her ultimate termination, or all of the aforementioned actions.  As such, Plaintiff apparently presents a broad-sweeping claim alleging that all actions against her, by all Defendants, were exacted in retaliation to Plaintiff's speech.  The issue now becomes: what actions, if any, on the part of the Plaintiff triggered retaliatory conduct on the part of the Defendants?  Plaintiff specifically suggests that the Defendants' "retaliatory conduct" was done in violation of Plaintiff's First Amendment rights. Given the nature of Plaintiff's claim, this Court must turn to a discussion of the First Amendment as it relates to a claim for employment retaliation.

In order to establish a § 1983 retaliation claim based on the First Amendment, a plaintiff must initially demonstrate that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination. *See Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977); *See also Thomsen v. Romeis*, 198 F.3d 1022 (7th Cir. 1998).  Once the plaintiff establishes all three factors, the burden shifts to the defendant to show by

12

preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct. *Id.* 429 U.S. at 287.

Under the first factor, "protected speech," courts have previously determined that the "question of whether certain speech enjoys a protected status under the First Amendment is a question of law, not fact." *Morris et al. v. Lindau et al.*, 196 F.3d 102, 110 (2nd Cir. 1998) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). A discharged public employee has no First Amendment claim unless he was speaking on a matter of public concern. *Connick*, 461 U.S. at 146-47. In *Connick*, the Supreme Court gave us guidance in determining when an employee's speech relates to a matter of public concern: "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.* at 147-48. In general, speech "on any matter of political, social, or other concern to the community" is protected under the First Amendment. *Id.* at 148. Moreover, the Seventh Circuit has stated: "[the] Connick test requires us to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Marshall v. Allen*, 984 F.2d 787, 795 (7th Cir. 1992) (*quoting Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir. 1987) (*quoting Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985)). Furthermore, the Supreme Court, in *Connick*, determined that "First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly." *Connick*, 461 U.S. at 146; *see also Givan v. Western Line Consolidated Sch. Dist.*, 439 U.S. 410 (1979).

In the case at bar, the Plaintiff alleges in her complaint that she registered repeated

13

complaints about Jordan with the Board, including a complaint filed with the Region VI Education Officer and a grievance filed with the Title IX Officer. Under *Connick*, complaints of this nature would certainly constitute "speech" related to a public concern. According to the Plaintiff, each complaint was filed in order to expose Jordan's harassing actions and to seek an appropriate form of employment relief. The Seventh Circuit seems to suggest that "speech" aimed at bringing wrongdoing to light is certainly considered a matter of public concern. Hence, Plaintiff clearly alleges sufficient facts to comply with the "public concern" prong of the 3-factor test under *Doyle*.

Under the second and third factors, Plaintiff must demonstrate an adverse employment action and a causal connection between the protected speech and the adverse employment action. In regard to the second factor, the Supreme Court has decided that adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *Rutan v. Republican Party*, 487 U.S. 62, 75 (1990). As for the third factor, the Plaintiff needs to establish a causal connection sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action. *Mount Healthy* City, 429 U.S. at 287. The causation element can be established "either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus. *Morris et al.*, 196 F.3d 102 at 110. The question of retaliation involves a defendant's motivation and intent which are both difficult to plead with specificity in a complaint. *Gagliardi v. Villiage of Pawling*, 18 F.3d 188,195 (2nd Cir. 1994) (*citing Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Hence, to survive a motion to dismiss, a plaintiff's pleading does not need

14

to clearly establish retaliatory intent, but rather, it is sufficient to allege facts which reasonably could support an inference to that effect. *Id.* At 195.

In her complaint, Plaintiff pleads sufficient facts to establish that she suffered an adverse employment action, principally the fact that she was terminated from her position. The Plaintiff also reveals facts indicating that the Board's investigation into her complaints was not conducted in a neutral manner, but instead, was conducted to benefit the Board "at every turn." In addition, the complaint states that Jordan specifically admonished Plaintiff for having any thoughts of filing a complaint against him. Moreover, the plaintiff also alleges sufficient facts to suggest that her termination was brought about in retaliation for the complaints she filed against Jordan. Therefore, based on Plaintiff's complaint, this Court could certainly find facts that establish both an adverse employment action and causation. Hence, employing the 3-factor test, this Court concludes that Plaintiff presents sufficient facts to allege a claim for employment retaliation.


### b. Plaintiff's Constitutional Injury Allegation Under Count VIII

Under Count VIII, Plaintiff alleges that her treatment by defendants, including her ultimate termination, was motivated by "sheer vindictiveness" and "wholly illegitimate reasons," thereby depriving her of equal protection of the laws. Equal Protection cases generally fall under three categories: (1) charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment; (2) challenges to laws or policies alleged to make irrational distinctions; and (3) charges that a powerful public official "picked-on a person" out of sheer vindictiveness. *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995).

In the case at bar, Plaintiff's complaint does not fit into the first two categories. The first

category requires that Plaintiff was singled-out and treated differently than other individuals. Plaintiff, however, pleads no facts to show that others were treated differently. Instead, she merely makes a bald assertion that her termination was motivated by "vindictiveness" and "wholly illegitimate" reasons. In the absence of factual allegations showing that she was treated differently than others, Plaintiff's complaint, as a matter of law, does not fit into the first category. The second category pertains to plaintiffs who challenge a law or policy. The Plaintiff, however, makes no such challenges. Hence, Plaintiff's remaining avenue lies in the third category.

Under the third category, a plaintiff must allege that he or she was "picked-on" by a powerful person for sheer vindictive purposes. *Id.* at 178. Under *Esmail*, an equal protection claim may withstand a motion to dismiss if the plaintiff alleges that the treatment in question was: (1) based upon sheer vindictiveness or spite; and (2) wholly unrelated to any legitimate state objective. *Id.* at 180. The Supreme Court has recognized that the Equal Protection Clause protects not only claims brought by identifiable groups, but also, claims brought by a "class of one" where: "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the decision. *Village of Willowbrook v. Olech*, 120 S.Ct. 1073 1074-75 (2000). Thus, Equal Protection "gives rise to a cause of action for a 'class of one' where the plaintiff did not allege membership in a class or group." *Id.* at 1074.

Under the first prong of *Esmail*, in the case at bar, the relevant issue is whether defendants' actions toward Plaintiff, including her termination, were motivated by vindictiveness and spite. This Court is not charged with the task of assessing the merits of Plaintiff's case, but instead, with determining whether or not she pleads facts indicating that

defendants' actions toward her were based upon sheer vindictiveness or spite. In her complaint, Plaintiff states in no uncertain terms that the Board's treatment of her, including her termination, was motivated by "vindictive" and "wholly illegitimate" purposes. Plaintiff also pleads facts questioning the neutrality of the Board's investigation into her complaints about Jordan, alleging that the Board's investigation was designed to "benefit the Board at every turn." Given the fact that Plaintiff filed numerous complaints against Jordan, including a formal grievance against the Board, it is not outside the realm of reason that the Board may have terminated Plaintiff for sheer vindictive purposes. Since this Court cannot examine the pleadings and magically determine the Defendants' state of mind at the time of their alleged unlawful actions, we must accept Plaintiff's allegations as true. This being the case, and viewing the allegations in a light most favorable to the Plaintiff, this Court finds that the Plaintiff adequately pleads facts suggesting that Defendants' treatment of Plaintiff was motivated by vindictiveness, or spite.

Next, in order to comply with the second prong of the test, Plaintiff must show that Defendants' actions were "wholly unrelated" to any legitimate state action. This Court is persuaded that Plaintiff pleads sufficient facts to establish that Defendants may have terminated her for purposes "wholly unrelated" to a legitimate state objective. Plaintiff states in her complaint that Defendants terminated her for engaging in part-time work while employed by the Board, but claims that the Board does not terminate other employees for the same conduct. Further, Plaintiff alleges that her termination was a mere pretext to hide unlawful retaliation. Assuming the truth of these allegations, Plaintiff's termination by the Board may have been, in fact, wholly unrelated to a legitimate state interest. In considering defendants' motion to dismiss, this Court will appropriately refrain from deciding the merits of the case. As such, this Court

17

finds that Plaintiff pleads sufficient facts to establish the second prong of *Esmail*.

Thus, this Court finds that the Plaintiff properly pleads an Equal Protection cause of action under the two-prong test set forth in *Esmail*. In addition, this Court also finds that Plaintiff properly pleads a "class of one" cause of action under Equal Protection. In their Reply Memorandum, defendants argue that Plaintiff provides no explanation as to the "class of one" to which she belongs. This argument, however, does not defeat Plaintiff's cause of action. In fact, the Supreme Court, in *Olech*, makes no such requirement that a "class of one" plaintiff identify herself with a particular group. In *Olech*, the Court merely requires that the plaintiff alleges that she has been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in treatment. This Court, in the foregoing analysis, has already determined that plaintiff has sufficiently pleaded the facts required by *Olech* and *Esmail*.

### 2. "Color of State Law" Requirement

In addition to showing that he or she suffered a constitutional injury, a § 1983 plaintiff must also show that his or her constitutional injury was committed by a person acting under color of state law. *West*, 487 U.S. 42, 48 (1988). An act is committed under color of state law when it is "made possible only because the wrongdoer is clothed with the authority of state law." *Munoz v. Chicago School Reform Bd. of Bd. of Trustees*, No. 99 C 4723, 2000 WL 152138, at *5 (N.D. Ill. Feb. 4, 2000) (*citing Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989)) (*quoting United States v. Classic*, 313 U.S. 299, 326 (1941)). A defendant acts under color of state law when he abuses the position given to him by the state. An action may be "classified under state law even where it is in excess of the authority actually delegated to the official under state law." *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980).

18

Plaintiff has sufficiently alleged that Jordan, as principal of Mount Jordan, was clothed with state authority when he engaged in a series of harassing activities aimed at the Plaintiff. Plaintiff also adequately alleges that the Board, Board Members and Vallas were acting under state authority when they investigated and ruled upon Plaintiff's claims against Jordan, and also, when they ultimately terminated Plaintiff's employment. Therefore, this Court finds that Plaintiff adequately pleads the "color of state law" prong of a cause of action under § 1983.

### 3. Conclusion

This Court finds that Plaintiff properly pleads sufficient facts to withstand a motion to dismiss for the following § 1983 claims: (1) a cause of action for First Amendment retaliation (Count VI); and (2) a cause of action for violation of Equal Protection (Count VIII). This Court also finds that Plaintiff fails to set forth sufficient facts to establish a substantive due process claim, under Count VI. Therefore, this Court **DENIES** Defendants' motion to dismiss Count VI as it relates to Plaintiff's First Amendment retaliation claim. However, this Court **GRANTS** defendants' motion to dismiss Count VI as it relates to Plaintiff's substantive due process claim as against all Defendants.

### B. Defendants' Motion to Dismiss Counts VI & VIII on Statute of Limitations Grounds

In their Motion to Dismiss, Defendants contend that Plaintiff's law suit is barred by the applicable limitations period for actions brought under 42 U.S.C. § 1983. The Supreme Court has held that the applicable limitations period for a § 1983 action is the state statute of limitations for personal injury torts. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Following *Garcia*, the Seventh Circuit held that Illinois' two-year personal injury limitations period governs all actions

under § 1983. *Kalimara v. Illinois Dep't. of Corrections*, 879 F. 2d. 276, 277 (7th Cir. 1989).

Although § 1983 cases are governed by the state statute of limitations period, the point at which

the limitations period begins to run is determined by federal law. *Wilson*, 471 U.S. at 261. Civil

rights claims, under § 1983, accrue "when the plaintiff knows or should know that his or her

constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991).

"Every constitutional tort actionable under § 1983 is treated as a personal injury, with the claim

accruing when the injury is inflicted." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)

(quoting *Diaz v. Shallbetter*, 984 F.2d 850, 855 (7th Cir. 1993) According to the Seventh

Circuit, the first step in determining the accrual date in a § 1983 violation is to identify the

injury. *Id.* Upon identifying the injury, the court may subsequently determine the date in which

the plaintiff could have sued for such an injury. *Id.* This date, according to the Seventh Circuit,

determines the point at which the "plaintiff 'knows or should have known' that his rights were

violated." *Id.*

In *Chardon v. Fernandez*, 454 U.S. 6 (1981), the Supreme Court confronted a case

similar to the case at bar. In *Chardon*, a group of non-tenured administrators filed suit against

the Puerto Rico Department of Education claiming they were fired for political reasons, in

violation of their First Amendment Rights. The law suit was subject to a one-year statute of

limitations. The plaintiffs filed suit within one year of their actual termination date, but more

than one year after they were informed of the termination decision. The Court held that the

applicable statute of limitations period began to run when notice of termination was given and

not on the date when employment terminated. *Id.* at 8.

In *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993), the Seventh Circuit held that a §

1983 action based on revocation of a liquor license accrued on the date that notice of revocation was given, and not on the actual closing date of the bar. According to the court, "the date of the alleged constitutional violation–the revocation of the license–was the date of accrual. *Id.* at 512. In reaching its decision, the court reasoned that in determining the accrual date in a § 1983 statute of limitations case, "the proper focus is on the time of the discriminatory act, not the point at which the discriminatory act becomes painful." *Id.* at 512 (*citing Delaware State College v. Ricks*, 449 U.S. 250 (1980)).

In the case at bar, Defendants argue that Plaintiff knew or should have known that her rights were being violated during the 1996-1997 school year, the period in which Plaintiff alleges that she was being harassed by Jordan. Defendants specifically contend that Plaintiff's cause of action accrued no later than April 1, 1997, the time in which Plaintiff filed her first complaint against Jordan, and the day in which Plaintiff sought a medical leave. This date also represents Plaintiff's final contact with Jordan. Plaintiff, however, claims that the operative date of accrual is August 27, 1998, the date of her employment termination. Since Plaintiff's cause of action is levied against multiple defendants, this Court will examine each claim as it relates to each individual Defendant, and thereby determine the proper accrual date for each cause of action.

### 1. Plaintiff's Cause of Action Against Jordan

This Court finds that the accrual date for Plaintiff's action against Jordan is April 1, 1997, the date of Jordan's last contact with Plaintiff. Based on our foregoing analysis of this case, we know that Plaintiff properly pleads two § 1983 actions: (1) First Amendment employment retaliation; and (2) denial of Equal Protection of the laws. The Plaintiff alleges that Jordan deprived her of her constitutional rights, under the First and Fourteenth Amendments, by

21

subjecting her to repeated incidents of harassment and retaliatory conduct, the last of which occurred on April 1, 1997, when Plaintiff filed a leave of absence request with Jordan. Plaintiff pleads facts indicating that on April 1, 1997, she separated from her employer and sought an illness leave due to stress stemming from Jordan's conduct. Plaintiff also indicates that her last contact with Jordan was April 1, 1997. In fact, Plaintiff indicates in her complaint that Jordan resigned from his position in the Fall of 1997. Plaintiff further reveals that on April 25, 1997, she filed a complaint against Jordan with the Board's Title IX Officer. These facts, alone, lead this Court to conclude that Plaintiff knew, or should have known, that her constitutional rights were violated on the date in which she filed her first complaint against Jordan. Under *Ricks*, however, the proper accrual date for a statute of limitations claim is the time of the discriminatory act, not the point in which the discriminatory act becomes painful. As a result, the foregoing facts clearly indicate that Jordan's last alleged act of discrimination and harassment occurred on April 1, 1997. Plaintiff pleads no other facts linking Jordan to illegal acts subsequent to the date of her last contact with Jordan on April 1, 1997.

Therefore, this Court concludes that Plaintiff's complaint against Jordan should have been filed no later than April 1, 1999. Instead, Plaintiff filed her complaint on January 20, 2000, nearly ten months beyond the proper limitations period for § 1983 claims. As such, this Court **GRANTS** defendants' motion to dismiss Counts VI and VIII of Plaintiff's complaint against Defendant Jordan, in both his individual and official capacities.

### 2. Plaintiff's Cause of Action Against Board, Board Members & Vallas

In determining the proper accrual date as it relates to the Plaintiff's claims against the Board, Board Members and Vallas, this Court must once again keep its eye on the ball. As stated

previously, the Plaintiff sufficiently states two § 1983 actions: (1) a First Amendment retaliation action; and (2) an Equal Protection action. Plaintiff, however, alleges a multitude of conduct which could conceivably apply to each cause of action. Therefore, it is important for this Court to carefully pinpoint the specific wrongful conduct in question, and determine whether it survives the two year statute of limitations for § 1983 violations.

In reviewing the facts alleged in Plaintiff's complaint, we find that the Board first learned of Plaintiff's complaints regarding Jordan's conduct on April 1, 1997, when Plaintiff filed a complaint with the Board's Title VI Officer. Plaintiff alleges that the Title VI officer found her complaint "unwarranted," when in fact, the officer failed to conduct any form of investigation, other than speaking with Jordan about the incident. Next, the Plaintiff alleges that she filed a complaint against Jordan with the Board's Title IX officer on April 25, 1997. The officer, in turn, conducted an investigation and issued his findings on August 20, 1997, concluding that Plaintiff's complaints were "unsubstantiated." Plaintiff next pleads that she participated in a multi-day Board arbitration hearing in March of 1998, at which time she accuses the Board of offering biased testimony against her. Specifically, she claims that the Board offered biased testimony against her, principally in the form of testimony presented by the Board's Title VI and Title IX officers.

Based on the facts of this case, Plaintiff's First Amendment and Equal Protection claims could conceivably apply to each of the following actions on the part of the Board and its agents: (1) the April 1, 1997, investigation by the Title VI Officer; (2) the April 25, 1997, investigation by the Board's Title IX Officer; (3) the Title IX Officers report on August 20, 1997; (4) the Boards multi-day arbitration hearing in March, 1998, including the allegedly "biased" testimony

23

of the Title VI and Title IX Officers; and (4) Plaintiff's ultimate termination by the Board.

The Plaintiff filed her law suit on January 20, 2000. Applying the two-year statute of limitations, this Court finds that Plaintiff's First Amendment and Equal Protection claims only survive if they are directed at conduct which occurred no earlier than January 20, 1998. As such, Plaintiff's First Amendment and Equal Protection claims, relative to allegations (1), (2), and (3), as enumerated above, are time barred by the two-year statute of limitations because they accrued prior to January 20, 1998. However, the Plaintiff's law suit, relative to allegations (4) and (5), as enumerated above, is not time barred by the statute of limitations for § 1983 claims.

Therefore, this Court **DENIES** defendants' motion to dismiss Counts VI and VIII as they relate to allegations of constitutional violations occurring on or after January 20, 1998 [for example, allegations (4) and (5) above]. This Court, however, **GRANTS** defendants' motion to dismiss Counts VI and VIII as it relates to allegations of constitutional violations occurring prior to January 20, 1998 [for example, allegations (1), (2) and (3) above].

### C. Defendants' Motion to Dismiss Counts VI & VIII As Against the Board, Board Members & Vallas on Liability-Related Grounds

### 1. Liability of the Board

The Supreme Court has announced that local governing bodies, including local officials sued in their official capacities, may be sued directly under § 1983 if: "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 659 (1978). A municipality, however, may not be held liable solely because it employs a tortfeasor.

*Id.* at 691. In other words, although a claimant may sue a local unit of government, including a school board, such an entity cannot be held liable under § 1983 on a theory of respondeat superior. *Id.* at 691. "Rather, the viability of a § 1983 action rests on an allegation that the execution of the local government body's 'official policy' itself results in a deprivation of a constitutionally protected right." *Munoz*, 2000 WL 152138, at *6.

The Seventh Circuit recognizes three ways in which a municipality can be said to have violated a person's constitutional rights: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; and (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baskin v. City of Des Plaines*, 138 F.3d 701, 704-5 (7th Cir. 1998) (*quoting Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994)).

In the case at bar, Plaintiff does not allege any facts whatsoever under the first two types of cases outlined above. She does not allege that the Board, or its agents, acted in accordance with an express policy, nor does she plead facts indicating that the Defendants' actions were part of a widespread practice or custom. Plaintiff's claim, therefore, if anything, rests upon the third category of cases. Under the third category of cases, a plaintiff may impose § 1983 liability on a municipality or local government based upon a "ratification theory" by "alleging that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it." *Munoz*, 2000 WL 152138, at *6 (*citing Baskin* at 705).

In *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993), the plaintiff, who was convicted of murdering two police officers, sued the City of Chicago and various police officers under §

1983, alleging that "torture" was used to coerce his confession. The City conceded that the Police Superintendent was responsible for formulating policy for the police Department, and therefore, constituted the "city" for purposes of the law suit. The facts in *Wilson* reveal that the Superintendent had received many complaints alleging that police officers, in the unit in which Wilson was tortured, were abusing suspects. The Superintendent, subsequently, had referred the complaints to the appropriate office within the Police Department which is responsible for investigating such matters, but the office had lost a number of complaints and failed to act upon them. The plaintiff argued that the City was liable to him under § 1983.

The court in *Wilson* concluded, however, that the failure to eliminate a certain practice cannot be equated to approving it. *Id.* at 1240. Instead, the Court held that a § 1983 claimant must prove that the municipality acted with "deliberate or reckless" indifference to complaints in order "to establish that an abusive practice has actually been condoned and therefore can be said to have been adopted by those responsible for making municipal policy." *Id.* According to the court, if the Superintendent had deliberately thrown the complaints into a wastepaper basket or told the officers to refrain from investigating the complaint, an inference would arise that he supported the practice of torturing "cop killers."

In *Baskin v. City of Des Plaines* 138 F.3d 701 (7th Cir. 1998), plaintiff filed a § 1983 claim against the City of Des Plaines alleging that his constitutional rights were violated during a routine traffic stop when officers subjected him to arbitrary and threatening conduct, assault and excessive force. The plaintiff claims that he attempted to file a complaint against the police officer, but the city refused to accept such a complaint. In refusing to accept the complaint, the plaintiff argues that the city essentially encouraged the police officer and his colleagues to

26

continue exercising unreasonable conduct, thereby establishing a policy of illegal conduct within the police department. The court, however, held that a claimant does not state a § 1983 complaint by merely alleging that the municipality failed to properly investigate or take action against the wrongdoer. *Id.*, 138 F.3d at 704. The court based its decision principally on the fact that the plaintiff failed to allege that the police officer himself was a policy maker, nor that a city official with policymaking authority acknowledged the police officer's conduct and approved it. *Id.* In the absence of such allegations, the court found that plaintiff's complaint failed to support a ratification theory.

In the case at bar, the Plaintiff sues the Board alleging, *inter alia*, that the Board retaliated against her in violation of her First Amendment rights and subjected her to a course of treatment, including her ultimate termination, that violated her rights to equal protection of the laws. This Court searched in vain to find a viable ratification theory in the set of facts pleaded by the Plaintiff. Plaintiff, instead, pleads general facts indicating that the complaints which she filed against Jordan were never properly addressed by the Board and that she was terminated for vindictive and "wholly illegitimate" purposes. Based on such scant facts, Plaintiff seeks redress against the Board.

Apparently, the Plaintiff bases her theory of relief against the Board on her belief that the Board Members and Vallas are responsible for formulating school policy, and therefore, constitute the "municipality" for purposes of this case. Plaintiff's complaint, however, is conspicuously devoid of any factual allegations alleging that the Board Members or Vallas announced, approved, encouraged, acquiesced in, knew of, or in any way adopted a policy of violating the constitutional rights of the Plaintiff. Plaintiff also fails to specify which role, if any,

the Board Members or Vallas played in allegedly violating Plaintiff's rights. Without more, this Court finds that Plaintiff fails to plead sufficient facts to support a § 1983 cause of action against the Board.

Plaintiff argues, however, that a § 1983 plaintiff need only plead that the wrongful conduct occurred at the defendants' direction or with their knowledge and consent. *Pl. Mem. of Law in Opp'n to Defs.' Mot. to Dismiss* at 5 (*citing Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Plaintiff further argues that she may recover under § 1983 if she alleges that the Defendants knew about the illegal conduct and facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might have seen. *Id.* (*citing Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Although this Court does not dispute the propositions that Plaintiff proffers above, we do not find the facts of neither *Gentry,* nor *Jones* particularly persuasive in regard to the case at bar.

In *Gentry,* the plaintiff, a prisoner, sued the prison superintendent, alleging that the superintendent violated his right of access to the courts by denying him use of scribe materials. The plaintiff in *Gentry,* unlike the Plaintiff in the case at bar, pleaded facts alleging that the official knew of the alleged constitutional violation. For instance, the plaintiff in *Gentry* claimed in his complaint that the superintendent knew of the denial of the scribe materials. In the present case, the Plaintiff fails to plead any facts showing a causal connection or an affirmative link between the action complained about and the official sued. *See Gentry*, 65 F.3d at 561 (*citing Wolf-Lillie v. Sonquist*, 699 F.2d at 992). This is a fatal defect in Plaintiff's complaint.

In *Jones,* the plaintiff, who was wrongfully convicted of a crime, sued the city of Chicago and several police officers under § 1983 for false arrest, false imprisonment, intentional infliction

of emotional distress, malicious prosecution, and conspiracy to commit these wrongs. He alleged that defendants' conduct denied him due process under the Fourteenth Amendment. In reaching its decision, the court examined a complex set of facts indicating that defendants were involved in a conspiracy against him. The court found that the evidence presented was sufficient to infer that the supervising officers "had known every false step taken by the subordinate officers, had approved every false step and had done their part to make the scheme work. . ." *Id.* at 992. The evidence consisted of the following: (i) information that a supervisor by the name of Deas, "deep-sixed" a report by Officer Laverty which exculpated the plaintiff; (ii) information that a supervisor, named Griffith, tried to derail Officer Laverty in his effort to exculpate the plaintiff; and (iii) information that a supervisor, named Palmer, signed a deceitful report for use by the prosecution. *Id.* The defendants in *Jones*, however, argued that a municipality cannot be held liable under § 1983. The court disagreed, holding that supervisors may be liable under § 1983, but only if they know about the illegal conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *Id.* According to the court, "[the government official] must in other words act either knowingly or with deliberate reckless indifference." *Id.*

The case at bar is quite different than *Jones*. In *Jones*, the court was privy to a litany of allegations suggesting that the police supervisors intentionally concealed exculpating information and carried-out a campaign against the plaintiff based on deceit. In the present case, the Plaintiff does not plead any facts indicating that Vallas, or the Board Members, condoned, or in any way facilitated illegal conduct by its employees, and in doing so, acted either knowingly or with a deliberate reckless indifference. Hence, even under the *Jones* approach, the Plaintiff fails to plead sufficient facts to support a cause of action under § 1983 against the Board.

This Court, however, stands by the reasoning articulated above in *Monell*, *Wilson*, and *Baskin* as applied to the case at bar. As such, because Plaintiff fails to establish a viable theory upon which liability can be imposed on the Board, this Court **GRANTS** Defendants' motion to dismiss Counts VI and VIII of Plaintiff's complaint against the Board.

## 2. Liability of Vallas & Board Members in their Official Capacities

In Counts VI and VIII of her complaint, the Plaintiff seeks to impose § 1983 liability on Vallas and the individual Board Members, both individually and in their official capacities. The Defendants, however, argue that when a local government is sued in a § 1983 action, as it is in this case, a suit against individual government officials is redundant, and therefore, should not stand. This Court finds this argument persuasive.

According to the Supreme Court, suits against a government officer in his or her official capacity is simply another way of pleading an action against an entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Seventh Circuit has declared that where a unit of local government is sued, the suit against the officials is redundant and should therefore be dismissed. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987); *see also Admiral Theatre v. City of Chicago*, 832 F.Supp. 1195, 1200 (N.D.Ill. 1993).

In the present case, Plaintiff has already sued the Board under § 1983. Hence, any suit against the individual Board Members and Vallas in their official capacities is purely redundant and should be dismissed. In addition, this Court has already decided that the Plaintiff has failed to establish a viable § 1983 action against the Board. Therefore, this Court **GRANTS** Defendants' motion to dismiss Counts VI and VIII as against the Board Members and Vallas in their official capacities.

### 3. Personal Liability of Board Members and Vallas

In her § 1983 suit, Plaintiff also seeks to hold the Board Members & Vallas personally liable for her alleged constitutional deprivations. The Board Members and Vallas argue that in order to impose personal liability on an individual under § 1983, the plaintiff must allege that the individual was personally responsible for the constitutional deprivation. According to the Defendants, Plaintiff fails to allege that they were personally liable for her alleged constitutional deprivation.

This Court has already established that "to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *Gentry*, 65 F.3d at 561 (*citing Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). The plaintiff must also show that the constitutional deprivation occurred at the defendant's direction, and with his or her knowledge and consent. *Gentry*, 65 3d at 561 (*citing Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1995) (*quoting Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). In other words, the "defendant must know of the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Id.* (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). According to the Seventh Circuit, recovery under § 1983 is only proper if there is causal connection or affirmative link between the action complained about and the official sued. *Wolfe-Lillie*, 699 F.2d at 869.

After reviewing the Plaintiff's complaint many times, this Court finds that Plaintiff alleges no facts whatsoever demonstrating that Vallas or any of the individual Board Members were personally responsible for the alleged deprivation of her constitutional rights. Moreover, the complaint does not specifically allege that either Vallas or the Board Members had personal

knowledge of the alleged deprivation, nor that the defendants personally condoned or directed such conduct. Instead, the complaint only indicates that Plaintiff filed complaints with the Board's Title VI and Title IX Officers; that such Officers found Plaintiff's complaints without merit; and that Plaintiff participated in a multi-day arbitration hearing pertaining to her grievance. The Plaintiff also alleges that she was terminated by the Board in violation of her constitutional rights. The Plaintiff, however, does not directly link the five individual Board Members and Vallas to any of the constitutional violations alleged in her complaint. Thus, the Court finds no credence in the Plaintiff's personal liability suit against Vallas and the individual Board Members.

Therefore, this Court **GRANTS** defendants' motion to dismiss Counts VI and VIII of Plaintiff's complaint as it relates to holding Vallas and the Board Members personally liable for the Plaintiff's alleged constitutional deprivations.

## II. Title IX Claim Against the Board (Count IV)

In Count IV of her complaint, the Plaintiff claims that the Board engaged in unlawful employment practices, in violation of Title IX of the Education Amendments of 1972 ("Title IX"). The Defendants move to dismiss Count IV on the grounds that Plaintiff's Title IX claim is barred by the two year statute of limitations period applicable to Title IX actions.

The text of Title IX, in relevant part, provides that "[no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The language of Title IX, however, does not contain a limitations period.

According to the Seventh Circuit, the limitations period for Title IX actions is governed

by the relevant state statute of limitations for personal injury actions. *Cetin v. Purdue University*, 94 F.3d 647, Nos. 94-3112, 95-1254, 1996 WL 453229 (7th Cir. Aug. 7, 1996); *see also Torrespico v. Columbia College*, No. 97 C 8881, 1998 WL 703450 (N.D. Ill. Sep. 30, 1998). Moreover, other circuits have also determined that actions under Title IX are governed by the personal injury statute of limitations. *See Lillard v. Shelby Cty. Bd. of Ed.*, 76 F.3d 716 (6th Cir. 1996) (holding that the state statute of limitations for personal injury actions applies to Title IX cases); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 618 (8th Cir. 1995) (holding that Title IX actions should be subject to the same limitations period that applies to § 1983 actions); *Bougher v. University of Pittsburgh*, 882 F.2d 74, 77 (3rd Cir. 1989) (holding that the most analogous state limitations period for Title IX actions is the period applicable to personal injury claims).

Although it is clear that the personal injury statute of limitations period applies to Title IX actions, what determines the accrual date for such actions? The Seventh Circuit has held that although federal courts follow the tolling laws of the state where the injury occurred, federal law determines the accrual date of a claim. *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir. 1991). According to the Seventh Circuit, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Id.* As such, civil rights claims accrue when the plaintiff knows or has reason to know that her constitutional rights have been violated. *Id.* Following the law of the Seventh Circuit, this Court will, therefore, subject the Plaintiff's Title IX claim to the Illinois personal injury statute of limitations. In Illinois, the statute of limitations period for personal injury actions is two-years. *See* 735 ILCS 5/13-202.

The Plaintiff in this case filed her complaint on January 20, 2000. In her complaint, she

alleges that Jordan subjected her to a series of harassing treatment during the 1996-1997 school year. The Plaintiff also reveals that she filed complaints against Jordan with a Title VI Officer on April 1, 1997, and with a Title IX Officer on April 25, 1997. Plaintiff alleges that the Board failed to properly respond to her complaints. Further, Plaintiff alleges that she participated in a multi-day arbitration hearing regarding her claims against Jordan in March of 1998. She claims that the Board offered biased testimony against her at this hearing. Plaintiff also claims that she was terminated on August 27, 1998, as a result of unlawful retaliation. Based on the foregoing facts, which clearly reveal that Plaintiff was conscious enough of her injuries to file repeated complaints with the Board, this Court concludes that Plaintiff knew or should have known that her rights were being violated at the time in which she was subjected to such alleged violations. As such, it is the opinion of this Court that the Plaintiff should have filed a lawsuit against the Board at the time in which her Title IX rights were violated, or within two years of such alleged violations. Hence, applying the two year limitations period, it is axiomatic to conclude that all alleged conduct on the part of the Board in violation of Title IX, occurring prior to January 20, 1998, is barred by the Illinois statute of limitations for personal injury claims.

Therefore, this Court **GRANTS** defendants' motion to dismiss Plaintiff's complaint as it relates to all alleged incidents of discrimination on the part of the Board occurring prior to January 20, 1998. Moreover, this Court **DENIES** Defendants' motion to dismiss Plaintiff's complaint as it relates to all alleged incidents of discrimination occurring on or after January 20, 1998.

## CONCLUSION

For the reason set forth above, we **DENY** in part and **GRANT** in part Defendants'

Motion to Dismiss (doc. #14) insofar as we:

(1) **DISMISS WITH PREJUDICE** Count # IV as it relates to all alleged incidents of Title IX

discrimination on the part of the Board occurring prior to January 20, 1998; all additional Title

IX Claims, under this Count, for alleged violations occurring on or after January 20, 1998,

remain in tact;

(2) **DISMISS WITH PREJUDICE** Counts # VI and # VIII as they relate to Plaintiff's

complaint against Defendant Jordan, in both his official and individual capacities;

(3) **DISMISS WITH PREJUDICE** Counts # VI and # VIII as they relate to all alleged § 1983

violations on the part of the Board , as well as individual Defendants Vallas, Chico, Bobbins,

Butt, Lavelle, and Saffold, occurring prior to January 20, 1998.

(4) **DISMISS WITHOUT PREJUDICE** Counts # VI and # VIII as against the Board, as well as

against the individual Defendants Vallas, Chico, Bobbins, Butt, Lavelle, and Saffold, in both

their official and individual capacities, as such Counts relate to alleged § 1983 violations

occurring on or after January 20, 1998; and

(5) **DISMISS** Count # IX, as a result of Plaintiff's voluntary consent to dismissal as set forth in

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**
**DATED:** June ___ 13 ___, 2000

WILLIAM J. HIBBLER, DISTRICT JUDGE

35