# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 395 | **DATE** | 8/28/2002 |
| **CASE TITLE** | Singleton v. Chgo Sch Refrm Bd | | |

**MOTION:**
[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment (#75-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, Defendants' Motion for Summary Judgment (#75-1) is **GRANTED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | SEP 03 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **KAARON SINGLETON** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. **00 C 395** |
| | ) | |
| **CHICAGO SCHOOL REFORM BOARD OF** | ) | **JUDGE WILLIAM J. HIBBLER** |
| **TRUSTEES OF THE CITY OF CHICAGO,** | ) | |
| **GERY J. CHICO, NORMAN BOBINS,** | ) | |
| **TARIQ BUTT, AVIS LAVELLE,** | ) | |
| **GENE SAFFOLD, PAUL G. VALLAS,** | ) | |
| **AND PAUL JORDAN** | ) | **DOCKETED** |
| Defendants. | ) | |

SEP 0 3 2002

### MEMORANDUM OPINION AND ORDER

The Court has before it Defendants' motion for summary judgment on Plaintiff's Third Amended Complaint. For the following reasons, Defendants' motion is **GRANTED** in its entirety.

### BACKGROUND

Karen Singleton ("Plaintiff") has alleged the Chicago School Reform Board of Trustees of the Board of Education of the City of Chicago ("Board"), Gery J. Chico, Norman Bobins, Tarig Butt, Avis Lavelle, Gene Saffold, and Paul G. Vallas (collectively, "Defendants") engaged in unlawful employment practices and violations of her constitutional rights. Plaintiff was a tenure-track teacher in the Chicago Public Schools and she has alleged her supervisor and former principal, Paul Jordan, subjecting her to repeated and unwelcome sexual advances, offensive language, and unlawful retaliation.

1

For a complete factual background regarding this case, please refer to the Court's June 13, 2000 opinion. 2000 WL 777925 (N.D. Ill. June 13, 2000).

## STANDARD OF REVIEW

The Court will grant summary judgment on the issues presented only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local No. 12 Pension & Welfare Plans,* 991 F.2d 356 (7th Cir. 1993). A genuine issue of material fact exists when, after examining the record and drawing all reasonable inferences in the light most favorable to the non-moving party, the dispute over facts might affect the outcome of the lawsuit and a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To avoid summary judgment, the party opposing the motion cannot merely rest on their pleadings, but must present specific facts demonstrating a genuine issue of material fact for trial. *Id.* at 324. All inferences will be drawn in favor of the non-moving party on the respective issues. *Holland v. Jefferson Nat'l Life Ins. Co.,* 883

F.2d 1307, 1312 (7th Cir. 1989). However, the Court is not required to draw every conceivable inference from the record; rather, the Court must draw only reasonable inferences. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 833, 886 (7th Cir. 1990).

## ANALYSIS

### Counts I and II - Title VII Sexual Harassment Claims

In Counts I and II, Plaintiff alleges Title VII hostile environment and *quid pro quo* sexual harassment claims against Defendant Board. Defendant contends Counts I and II are time-barred.

In Illinois, a plaintiff must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). The 300-day limit begins to run when the defendant takes the action that injures the plaintiff and the plaintiff discovers the injury, not when the plaintiff learns the injury was unlawful. *Sharp*, 236 F.3d at 372.

Plaintiff has identified the "alleged unlawful employment practice" as Principal Jordan's sexual harassment during the 1996-1997 school year. The Court has considered the following critical dates in determining when the 300-day limit started to run: (1) Plaintiff admitted she thought Jordan was sexually harassing her in September 1996 (Pl.s' Resp. to Defs.' SMF ¶17);

3

(2) Plaintiff's last day of work and final contact with Jordan was March 14, 1997 (Pl.s' Resp. to Defs.' SMF ¶¶19,20); (3) Plaintiff registered a complaint regarding Jordan's sexual harassment with Defendant Board's Title IX Officer in April 1997 (Pl.s' Resp. to Defs.' SMF ¶26); and (4) Plaintiff signed an acknowledgment form on June 6, 1997 that advised her how to pursue filing a sexual harassment claim and the time limitation involved (Pl.'s Resp. to Defs.' SMF ¶30).

Even if the Court ignored the great likelihood that Plaintiff discovered the injury earlier and accepted the latest possible date of June 6, 1997, then her charge is still untimely. Plaintiff filed her charge of discrimination which formed the basis of her Title VII claims with the Illinois Department of Human Rights on May 25, 1999 and it was cross-filed with the EEOC on June 1, 1999. As a result, Plaintiff's charge of discrimination is untimely because it was filed almost two years after the alleged unlawful conduct occurred that Plaintiff contends formed the basis of her Title VII claim.

Plaintiff argues that the Supreme Court's recent decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002), permits her to avoid the statute of limitations by grouping the untimely allegations comprising her Title VII claims with subsequent allegations of unlawful non-sexual harassment activity by Defendant Board. Plaintiff's reliance on *Morgan* is misplaced

and its teachings do not save Plaintiff's claims in either Count I or Count II from being incurably untimely.

In *Morgan*, the majority distinguished between claims based upon discrete acts from those based upon hostile work environment claims in considering whether alleged acts outside the statutory filing period are actionable under Title VII. *Id.* at 2069-75. The Supreme Court in *Morgan* explicitly determined discrete acts that are time-barred are not actionable even if they are related to acts alleged in a timely charge. *Id.* at 2072.

In the present case, Plaintiff's allegation of *quid pro quo* sexual harassment in Count II is a separate and distinct act of sexual harassment by Principal Jordan on one occasion. Such an action is a discrete act, because it is based on a specific instance of unlawful conduct and does not involve repeated unlawful conduct. It remains undisputed that Plaintiff's last day of work and therefore last possible contact with Principal Jordan was March 14, 1997. Accordingly, it is factually impossible that any *quid pro quo* sexual harassment could have occurred within the 300-day filing limit required for such discrete acts and therefore *Morgan* does not save Count II from its untimely defect.[1]

_____

[1] However, the Supreme Court in *Morgan* draws a distinction for hostile work environment claims in which acts outside the statutory period are actionable in some circumstances, since hostile work environment claims by their very nature involve repeated conduct. *Id.* at 2073. Significantly, if "an act contributing to the claim occurs within the filing period", then a court may

To establish a prima facie case of hostile work environment sexual harassment, Plaintiff must, in part, demonstrate Defendant subjected her to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. Jan. 8, 2002). Plaintiff's hostile work environment sexual harassment claim contends Principal Jordan alone repeatedly sexually harassed her. As discussed above, her last contact with Principal Jordan was March 14, 1997, i.e. her last day of work. Plaintiff's charge of discrimination, however, was not filed until May 25, 1999. Since she had no contact with Principal Jordan for almost two years prior to her filing of her charge, Jordan could not have engaged in actionable sexually inappropriate behavior within 300 days of her filing. Without evidence of any act that is part of the hostile work environment falling within the 300-day limit, as *Morgan* instructs, Plaintiff's claim remains time-barred. Plaintiff may not rely on non-sexual harassment conduct by Defendant Board to save the time-barred allegations, as

---

consider the entire duration (i.e. including acts outside the limit) of the hostile environment in the event *Id.* at 2074. The *Morgan* Court retained the requirement that for a hostile work environment to be timely, the employee must file a charge within 300 days of any act that is part of the hostile work environment. *Id.* at 2075.

Plaintiff's claim of hostile work environment is premised explicitly on sexual harassment by Jordan.

Plaintiff's reliance on *Frazier v. Delco Elecs. Corp.*, 263 F.3d 663 (7th Cir. 2001), is similarly misplaced and does not support her contention that the doctrine of equitable estoppel saves her claims from their untimeliness. In *Frazier*, the court, after examining the relevant time period, applied equitable estoppel to toll the statute of limitations because it concluded that the plaintiff was misled to believe the defendant employer was working on the problem which caused the plaintiff to delay suing. *Id.* at 667. Therefore, the holding in *Frazier* is consistent with the well-established rule that the doctrine of equitable estoppel, also known as fraudulent concealment, is available only if the defendant takes active steps to prevent the plaintiff from suing. *Sharp*, 236 F.3d at 372; *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). The law is well-settled if an employer provides an avenue (or avenues) for review of adverse employment actions, then the doctrine of equitable estoppel is not applicable unless the plaintiff employee provides evidence of misleading, false impressions or other employer misconduct. *Sharp*, 136 F.3d at 372; *See also Int'l Union of Elec. Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 234-35 (1976) (proceeding with a grievance and arbitration process was

7

not grounds for tolling during the pendency of those results); *Lever v. Northwestern Univ.*, 979 F.2d 552, 555-56 (7th Cir. 1992) (offering many "forums for persuasion" by means of review or appeals of final decisions is not sufficient to apply equitable estoppel and permit delay).

Plaintiff dismisses the arbitration proceeding as a "sham." (Pl.s' Reply Brief at 16.) Although Plaintiff may be upset with the results of the arbitration proceedings, she fails to present evidence Defendant Board or others affirmatively attempted to use the arbitration proceedings as a means to delay her from filing a lawsuit.

To the contrary, the record reveals on June 6, 1997, only two months after Plaintiff first complained of sexual harassment and well within the statutory time period to pursue a claim, Defendant Board advised Plaintiff of her rights to file a charge with the EEOC; Plaintiff subsequently signed an acknowledgment that she received that information. Additionally, Plaintiff was notified of Defendant Board's Title IX Officer's findings that Plaintiff's allegations were unsubstantiated via a memorandum addressed directly to Plaintiff dated August 8, 1997. These actions demonstrate Defendants did not mislead or give the false impression to Plaintiff that her claims were meritorious or being further resolved by Defendant Board. (Pl.s' Resp. to Defs.' SMF ¶32.) Ultimately, the arbitration proceedings were a legitimate

dispute resolution option that Plaintiff strategically chose to pursue; even if Plaintiff is now dissatisfied with the dispute being resolved in Defendants favor, the process did not create a false impression of resolution.

Because Plaintiff's Title VII claims are clearly time-barred, the *Morgan* decision is inapplicable, and equitable estoppel is likewise unavailable to save Plaintiff's claims from being untimely, Defendants are entitled to summary judgment on Counts I and II.

### Count III - Title VII Retaliation Claim

In Count III, Plaintiff alleges Defendant Board retaliated against her when she resisted conduct she believed to be unlawful discrimination. Specifically, Plaintiff asserts Defendant Board engaged in unlawful retaliation when it refused to properly investigate her complaints or take corrective action, engaged in improper conduct during arbitration proceedings, terminated her employment, and prevented her from returning to a teaching position with the Chicago Public Schools. (Third Am. Compl. ¶50.) In response, Defendants assert Plaintiff's retaliation claim is without merit because: (1) she fails to establish the "causal connection" element required for a prima facie case and (2) she presents no evidence of discriminatory intent by Defendant Board.

As discussed above, only discrete acts that occurred within 300 days of Plaintiff filing her charge of discrimination are permitted to establish her retaliation claim. Any acts prior to the 300 days are similarly time-barred and irelevant for the retaliation analysis. As a result, the only relevant allegations that remain are Defendant's improper behavior during arbitration proceedings, the termination of her employment, and the bar against her returning to a teaching position.[2]

To prevail on a retaliation claim, a plaintiff must either offer direct evidence of retaliation or proceed under the burden shifting method to indirectly establish unlawful retaliation. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Contreras v. SunCast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001). In the present case, Plaintiff provides no direct evidence of retaliation and therefore must establish the prima facie case for discriminatory retaliation under the burden shifting method. *Contreras*, 237 F.3d at 765. To establish a prima facie case under Title VII for retaliation, Plaintiff must show: (1) she engaged in a statutorily protected activity; (2)

---

[2] As discussed above, the arbitration proceedings were a legitimate dispute resolution option that Plaintiff chose to pursue strategically. The Court finds unpersuasive Plaintiff's insinuations it was improper for Defendants to attempt to deliver documents regarding notice of the investigative conference of an unrelated matter to Plaintiff during the arbitration proceedings. The conference was unrelated to the grievance arbitration and Defendants' actions were appropriate, e.g. sending a letter to inform Plaintiff's attorney the documents were unrelated to the arbitration matter. Therefore, the Court will address together the unlawful termination of her employment and the refusal to rehire as the crux of Plaintiff's retaliation claims.

she suffered an adverse employment action; and (3) the existence of a causal connection between her complaints of sexual harassment by Jordan and the Board's alleged acts of retaliation towards her. *Id*. If Plaintiff has established the prima facie case, then the burden shifts to Defendant Board to articulate a legitimate, nondiscriminatory reason for its conduct. *McDonnell*, 411 U.S. at 802-03; *Contreras*, 237 F.3d at 765. If Defendant Board meets this burden, then Plaintiff must prove by a preponderance of the evidence that the nondiscriminatory justification asserted by Defendant is only a pretext for discrimination. *McDonnell*, 411 U.S. at 804; *Contreras*, 237 F.3d at 765.

Defendant Board challenges Plaintiff's ability to establish the third element, i.e. Plaintiff lacks the necessary causal connection. Plaintiff presents no persuasive evidence of a causal connection between her complaint of sexual harassment and her termination (and refusal to rehire) to support her claim that Defendant Board retaliated against her. Instead, Defendant Board presents evidence the decision to terminate (and refusal to rehire) was based on facts unrelated to the sexual harassment claim: (1) Plaintiff completed the leave of absence application form that clearly stated she may not accept employment elsewhere and doing so was grounds for dismissal (Pl.'s Resp. to Defs.' SMF ¶23); (2) Plaintiff did not report to work after March 14, 1997

and she presents no evidence that she was directed to report to work or disciplined for not reporting to work (Pl.'s Resp. to Defs.' SMF ¶23); (3) Plaintiff admitted to working full-time for another employer during her illness leave (Pl.'s Resp. to Defs.' SMF ¶36-37); (4) Plaintiff notified Defendant Board she would return to work, but not until the beginning of the 1998-1999 school year, because it was not to her economic advantage to do so (Pl.'s SMF ¶95; Defs.' SMF ¶47); and (5) shortly thereafter, the Board's attorney found this unacceptable and sent a memorandum recommending Plaintiff's termination for violating Board policy by engaging in secondary employment while on an illness leave (Pl.'s Resp. to Defs.' SMF ¶48).[3]

Plaintiff states the timing of her termination suggests retaliation. Although the timing of an employee's discharge may be circumstantial evidence of retaliatory motive, the termination must occur soon after the employee's protected expression to support an inference of retaliatory motive. *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000)(Seventh Circuit declined to infer retaliatory motive when plaintiff's termination occurred almost a year after the protected action of reporting sexual harassment).

---

[3] Defendants have presented evidence of a legitimate, nondiscriminatory reason for termination, i.e. Plaintiff violated Defendant's personnel policy when she accepted outside employment during her illness leave. Thus, Defendants have met their burden.

In the present case, Plaintiff met with Defendant Board's Title IX Officer to report sexual harassment on April 25, 1997. Defendants' terminated Plaintiff's employment effective August 26, 1998. Plaintiff alleges three aspects of timing support an inference of retaliation: (1) the termination and decision not to rehire in the future occurred after her complaint of sexual harassment; (2) these actions by Defendant Board occurred during arbitration proceedings regarding her sexual harassment grievance; and (3) the actions occurred after a memorandum drafted by Defendant Board's attorney, Margaret Kostopulos, recommended disciplinary proceedings be initiated against Plaintiff.

Plaintiff's first and second contentions fail to persuade, because the Court considers critical the "time lapse between the adverse action and the *protected expression*" when it determines whether to draw an inference of retaliatory motive. *Id.* at 1010 (emphasis in original). Plaintiff's protected conduct (i.e. complaining of sexual harassment) occurred more than a year before Defendant Board terminated her employment. Further, the complaint of sexual harassment, and not the arbitration proceedings, is the protected conduct critical to the Court's analysis. Kostopulos' memorandum is similarly irrelevant evidence of a retaliatory motive, since Kostopulos' recommendations stemmed directly from Plaintiff's own admission

during arbitration proceedings that she violated Defendant Board's policy against secondary employment. Although Kostopulos' memorandum mentioned "time was of the essence", because Plaintiff was nearing tenure, the document reflected only an accurate account of Plaintiff's current situation (i.e. her leave of absence had expired and she was working secondary employment both clearly in violation of personnel policy) as it related to her employment with Defendant Board. Although the memorandum reported the relevant personnel violations and initiated the disciplinary procedures against Plaintiff, there is no evidence to suggest Kostopulos had any further involvement with Plaintiff's termination proceedings.

Furthermore, Plaintiff recognized Defendant Board's ban on secondary employment while on illness leave and the potential penalty of dismissal for such misconduct. (Pl.'s Resp. to Defs.' SMF ¶23.) Plaintiff's attempts to explain her actions (i.e. she did so in the spirit of mitigating damages or because of her need to provide for her family) are unpersuasive; her blatant misconduct is fatal to her claim and she is unable to establish Defendants' proffered legitimate and nondiscriminatory reason for termination is merely a pretext.

Plaintiff relies on *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990), and maintains even if Defendant Board itself did not possess knowledge of Plaintiff's complaints, it remains liable

because it acted simply as a "rubber-stamp" for the supervisors who sought to retaliate against Plaintiff. However, the plaintiff in *Shager* suffered more severe and direct injury from his employer than Plaintiff. In *Shager*, the Seventh Circuit considered a plaintiff's age discrimination claim against the defendant employer for its Career Path Committee's decision to terminate plaintiff. *Id.* The evidence was overwhelming that plaintiff's direct supervisor "not only set up [plaintiff] to fail by assigning him an unpromising territory but influenced the committee's deliberations by portraying [plaintiff's] performance to the committee in the worse possible light." *Id.* at 405. The *Shager* court found that in light of this overwhelming evidence the committee's decision to terminate plaintiff was tainted by his supervisor's prejudice. *Id.* The court ruled that the innocence of the committee members would not insulate the company from liability. *Id.*

To the contrary, Plaintiff asserts only conclusory allegations that Kostopolus organized Plaintiff's retaliatory discharge. Plaintiff presents no evidence to support this claim. Similarly, Plaintiff provides no evidence to support her allegations that other Defendants were simply "rubber-stamps" and should therefore be liable. Significantly, Plaintiff's lack of any evidence to support her assertions distinguishes the present case from *Shager*.

The Seventh Circuit's more recent decision in *Paluck* is more closely analogous to the present case. In *Paluck*, the plaintiff alleged her supervisor, Heis, sexually harassed her. The court considered whether a memorandum Heis wrote after the allegations were made by plaintiff and which criticized the plaintiff's performance raised an inference of retaliation. 221 F.3d at 1007-10. The plaintiff admitted the problems regarding her attendance, tardiness, and excessive personal telephone calls were accurately depicted in Heis' memorandum. Nonetheless, she alleged she was treated unfairly. *Id.* at 1008. Mork, another supervisor who was aware of the plaintiff's complaint of sexual harassment against Heis and Heis' memorandum, laid the plaintiff off as a result of corporate downsizing. *Id.* at 1007-08. The plaintiff then alleged her termination was in retaliation for her reporting complaints of sexual harassment against Heis. *Id.* at 1008.

The Seventh Circuit emphasized that a plaintiff's filing of a discrimination complaint does not prevent her employer from implementing disciplinary actions when her conduct warrants such discipline. *Id.* at 1011. The *Paluck* court affirmed summary judgment in favor of the defendant employer and determined the plaintiff failed to provide evidence a desire to retaliate motivated her termination. *Id.* Specifically, the Seventh Circuit explained:

> Because it is undisputed that [the plaintiff]'s actions
> justified disciplinary measures, we do not think a
> discriminatory motive reasonably may be inferred from
> Heis' taking such measures. Thus, even if Mork did
> rely on Heis' memorandum to terminate [the plaintiff],
> no reasonable finder of fact could conclude that his
> decision to do so created a situation in which
> retaliatory motive caused Ms. Paluck's dismissal.

*Id.*

In the present case, even if the other Defendants relied on Kostopolus' memorandum recommending Defendant Board initiate disciplinary proceedings to terminate Plaintiff, the Court may not infer a retaliatory motive from Defendant Board's action. Plaintiff admitted she violated personnel policy by working for another employer while on illness leave. Kostopolus' memorandum was an accurate account of Plaintiff's personnel violations. It is undisputed Plaintiff violated personnel policy and her actions warranted disciplinary action; accordingly, the Court will not infer a retaliatory motive from her employer taking those steps. Kostopolus' memorandum fails to raise an inference of retaliatory motive and Plaintiff similarly fails to establish a prima facie case of retaliatory discharge.

Even if Plaintiff could establish a prima facie case, as discussed above, Defendants have provided a legitimate, nondiscriminatory reason for Plaintiff's termination and she subsequently fails to meet her burden under the *McDonnell Douglas* burden-shifting test. Therefore, Defendants are entitled to summary judgment on Count III.

As a result of the Court's October 10, 2000 minute order, all allegations of conduct prior to January 20, 1998 are time-barred. Subsequently, Plaintiff alleged in Count IV of her Third Amended Complaint that Defendant Board violated Title IX when it failed to take corrective action on or after January 20, 1998, against Plaintiff's alleged harasser, Jordan.

Plaintiff's allegations in Count IV have a fatal flaw: Jordan resigned from Defendant Board's employment in December 1997. (Defs.' SMF at ¶46.) After the claim's operative date of January 20, 1998, Jordan was no longer an employee of Defendant Board and therefore it was factually impossible for Defendant Board to take any corrective measure against Jordan.[4]

In any event, the appropriate personnel investigated Plaintiff's allegations in a diligent manner.[5] Defendant Board's Title IX Officer comprehensively investigated Plaintiff's complaint and interviewed Plaintiff, the alleged harasser, and

---

[4] The is factual impossibility independently merits summary judgment in favor fo Defendant Board on Count IV; however, the Court will proceed with its additional analysis in the interest of clarity.

[5] Plaintiff almost entirely ignores Defendant Board's challenge of Count IV. In response, Plaintiff merely offers two potentially relevant statements: first, "to establish liability under Title IX, a plaintiff must show that the Defendants' response to Plaintiff's complaints of harassment was clearly unreasonable in light of known circumstances amounting to deliberate indifference"; and second, "[a] prima facie case of retaliation under Title IX mirrors the Title VII prima facie case." (Pl.'s Reply Brief at 9-10.) Both statements are simply conclusory statements of law and are not evidence Defendant Board improperly investigated Plaintiff's allegations.

various other teachers. Further, Defendant Board's Title IX
Officer completed a detailed report of her investigation and in
July 1997 determined Plaintiff's complaint was unsubstantiated.
Plaintiff was specifically notified of the investigation results.
The union then took Plaintiff's grievance to arbitration; after
receiving  witness testimony from both parties, cross-examination
of all witnesses and post hearing briefs, the arbitrator denied
Plaintiff's grievance. Although Plaintiff may be dissatisfied
with the results of the Title IX Officer's investigation and the
decision of the arbitrator, the record reveals Plaintiff's
allegations were thoroughly investigated.

For the above reasons, Defendant Board is entitled to
summary judgment on Plaintiff's Title IX claim.

### Count V - ADA Claim

In Count V, Plaintiff originally pleaded a claim under the
ADA. However, in response to Defendants' motion for summary
judgment, Plaintiff voluntarily dismisses Count V.

### Count VI - Section 1983 First Amendment Retaliation Claim

In Count VI, Plaintiff alleges the Board offered biased
testimony against her at the arbitration hearing and terminated
her employment and thus violated her First Amendment rights by
retaliating against her for complaining about Principal Jordan's

misconduct.[6]  To prevail on a Section 1983 First Amendment retaliation claim, Plaintiff must establish: (1) her conduct was constitutionally protected and (2) her actions were a substantial or motivating factor for the alleged acts of retaliation taken by the Defendants. *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 911 (7th Cir. 1996).  In response, Defendants argue Plaintiff fails to establish the first element, i.e. her conduct was not constitutionally protected and thus not actionable.[7]

The Court utilizes a two-step test to analyze First Amendment retaliation claims asserted by public employees that allege a violation of protected speech. *Gonzalez v. City of Chicago*, 239 F.3d 939, 940 (7th Cir. 2001).  First, the Court must confirm the employee spoke "as a citizen upon matters of public concern."[8]  *Id.* (citing *Connick v. Myers*, 461 U.S. 138,

---

[6] In its June 13, 2000 Memorandum and Order, the Court determined only two of Plaintiff's five alleged retaliatory acts fell within the required two-year statute of limitation and granted Defendants' motion to dismiss the other three alleged retaliatory actions. *Singleton*, 2000 WL 777925, at *13. Accordingly, the Court will analyze only the remaining two allegations.

[7] To meet her burden, Plaintiff relies solely on the Court's June 13, 2000 Memorandum and Order, 2000 WL 777925, at*8.  There, the Court found Plaintiff had alleged sufficient facts to satisfy the public concern prong of the three-factor *Doyle* test, see *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 283-87 (1977), and followed the holding in *Azzaro v. County of Allegheny*, 110 F.3d 968 (3rd Cir. 1997).  The Court made its previous finding in light of Plaintiff's relatively modest burden on a motion to dismiss; given Plaintiff's heightened burden on the present motion for summary judgment, the Court takes the opportunity to clarify its previous finding.  Moreover, the *Azzaro* court explicitly distinguished itself from the Seventh Circuit's analysis in this area; the Court follows the wisdom of the Seventh Circuit.

[8] Though not at issue here, the second step is the balancing of the "interests of the employee, as a citizen, in commenting upon matters of public concern

20

147 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. Further, when a plaintiff's speech intends to serve a private or personal interest, it may not meet the requirements to establish protected speech under the First Amendment. *Gonzalez*, 239 F.3d at 941. "[S]peaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed in *Connick*." *Id*.

In *Callaway v. Hafeman*, the Seventh Circuit considered a closely analogous claim of First Amendment retaliation when a school district employee complained of sexual harassment by her supervisor and was subsequently transferred and demoted. 832 F.2d 414, 415 (7th Cir. 1987). The Seventh Circuit noted it is "undoubtedly true that incidences of sexual harassment in a public school district are inherently matters of public concern." *Id*. at 417. In analyzing the content, form, and context of the plaintiff's alleged protected speech, the Seventh Circuit explained her "communications were always made in a context

---

and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Gonzalez*, 239 F.3d at 941 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The Court does not have to balance the respective interests of the speaker and the State unless the speaker first establishes her speech addressed a public concern. *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 409 (7th Cir. 1994).

relating to the resolution of her personal dispute" with her alleged harasser. *Id.* Although the communications touched on an issue of public concern, "she spoke as an employee attempting to resolve her private dilemma." *Id.* The *Callaway* court held the employee's complaint of sexual harassment was personal, not public, and thus, not actionable. *Id.*

Similarly, in *Gray v. Lacke*, the Seventh Circuit considered another analogous claim of First Amendment retaliation when an employee complained of sexual harassment by one of her supervisors to two of her other supervisors.[9] 885 F.2d 399, 411 (7th Cir. 1989). The court noted the plaintiff's complaint of sexual harassment is "inherently a matter of public concern" and focused on the point of the speech to determine if plaintiff addressed a public or private matter. *Id.* The *Gray* court found the plaintiff complained to her supervisors to stop her sexual harassment and therefore "her communication related solely to the resolution of a personal problem." *Id.* As a result, the court held the plaintiff failed to state a claim under Section 1983. *Id.*

In the present case, Plaintiff alleges Defendant Board and the Individual Defendants retaliated against her when she

---

[9] Although the *Gray* court analyzed that plaintiff's allegations as three separate instances of engaging in potentially protected speech, the Court finds the only analogous and thus relevant allegation is the complaint made to supervisors regarding alleged sexual harassment. *Gray*, 885 F.2d at 411.

reported Principal Jordan's sexual harassment. Although sexual harassment in public schools inevitably touches on matters of public concern, Plaintiff's complaint was of a personal nature. Similar to the plaintiff in *Callaway*, Plaintiff was an employee resolving a private dispute; like the plaintiff in *Gray*, Plaintiff sought to stop her alleged harassment and resolve a personal problem. Although Plaintiff proceeded through the powerful tool of discovery, she brings forth no evidence she was acting on behalf of all teachers or for some greater matter of public concern. Plaintiff asserts only conclusionary allegations that Defendant Board and other teachers knew of problems with Jordan and the Local School Council complained about Jordan, "all of which undoubtedly led to [Jordan's] resignation during the middle of the 1997-1998 school year." (Pl.'s Reply Brief at 14.) Significantly, Plaintiff points to no evidence in the record to support those allegations. Further, Plaintiff fails to establish Jordan similarly harassed any other women or that Plaintiff was acting on their behalf as a matter of public concern. Therefore, Plaintiff fails to establish her conduct was constitutionally protected and as a result, Defendants are entitled to summary judgment on Count VI.[10]

---

[10] Because the Court finds Plaintiff fails to establish her conduct was constitutionally protected, the Court will not address whether Plaintiff's actions were a substantial or motivating factor for the alleged acts of retaliation taken by Defendants.

## Count VII - Section 1983 Equal Protection Claim

In Count VII, Plaintiff alleges Defendant Board and the Individual Defendants violated her Section 1983 Equal Protection rights. To establish a prima facie claim for a Section 1983 Equal Protection violation, Plaintiff must demonstrate: (1) she is similarly situated to members of the unprotected class (i.e. the "protected class" is employees who complained of sexual harassment); (2) she was treated differently than members of the unprotected class; and (3) Defendants acted with discriminatory intent. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 944-945 (7th Cir. 1996).

Plaintiff merely asserts she "may state an equal protection claim as a 'class of one' where she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (Pl.'s Reply Brief at 10). Plaintiff relies on the decisions in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), and *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), to support her equal protection claim. Plaintiff's reliance is misplaced on both accounts.

The courts in both cases decided Rule 12(b)(6) motions to dismiss for failure to state a claim, and favored the plaintiffs with a significantly more lenient standard of review and lesser burdens. *Village of Willowbrook*, 528 U.S. at 563; *Esmail*, 53 F.3d

24

at 177.  Further, those decision addressed whether a "class of one" could state a claim for equal protection when the plaintiff did not allege membership in a class or group.  *Village of Willowbrook*, 528 U.S. at 564; *Esmail*, 53 F.3d at 180.  That critical inquiry is not at issue here.

Regardless, those cases are distinguishable from Plaintiff's claim.  Both cases survived a motion to dismiss because the plaintiff's sufficiently alleged they were intentionally treated differently from others similarly situated.  Specifically, in *Village of Willowbrook*, the plaintiff alleged the defendant village demanded a 33-foot easement to connect her property to the municipal water supply, whereas the village only required other similarly situated property owners to have a 15-foot easement.  528 U.S. at 563.  Likewise, in *Esmail*, while the plaintiff had not yet conducted formal discovery, he produced an extensive list of specific individuals whose conduct was more serious and yet were punished more lightly than the plaintiff or not at all.  53 F.3d at 178.

In the present case,  even after conducting discovery, Plaintiff fails to identify any similarly situated employees (a) not in the protected class (b) who worked secondary employment in violation of the Defendants' personnel policy (c) and Defendants' did not terminate as a result.  Plaintiff admits she is not personally aware of other Defendant Board employees that worked

secondary employment while on a leave of absence and were not terminated. (Pl.s' Resp. to Defs.' SMF ¶89.) Despite Plaintiff's erroneous suggestion that it is the Defendant Board's responsibility to produce such evidence, the burden rests solely on the Plaintiff and she fails to carry it. (Pl.s' Resp. to Defs.' SMF ¶89.) Further, Plaintiff fails to present any evidence that Defendants intentionally treated her differently than a similarly situated person in the unprotected class. Plaintiff's Section 1983 equal protection claim fails as a matter of law because she fails to establish a prima facie case and Defendants are therefore entitled to summary judgment on Count VII.

## CONCLUSION

Therefore, for the above stated reasons, this Court **GRANTS** Defendants' motion for summary judgment and the complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

**Dated:** August 28, 2002

**WILLIAM J. HIBBLER, DISTRICT JUDGE**

26